United States District Court
Southern District of Texas
**ENTERED**
July 21, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| VICENTE MENDOZA JR., <br>    Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | Case No. 1:20-cv-104 |
| ANDREW SAUL, COMMISSIONER, <br> SOCIAL SECURITY ADMINISTRATION, <br>    Defendant. | § <br> § <br> § <br> § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Plaintiff Vincente Mendoza Jr.'s Motion for Summary Judgment (hereinafter, Mendoza's "Motion" or "Motion for Summary Judgment") and Defendant Commissioner Andrew Saul's "Cross-Motion for Summary Judgment" (hereinafter, Saul's "Cross-Motion"). Dkt. No. 11; Dkt. No. 13. For the reasons provided below, it is recommended that the Court: 1) **DENY** Mendoza's Motion; 2) **GRANT** Saul's Cross-Motion; 3) **AFFIRM** Saul's final decision in Mendoza's underlying administrative action; and 4) **DIRECT** the Clerk of Court to **CLOSE** this civil action.

**I. Jurisdiction**

Mendoza seeks judicial review of Saul's final decision, which denied Mendoza's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter, the "Act"). *See* Dkt. No. 1 at 2; Dkt. No. 15 at 1. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Factual and Procedural Background

Mendoza filed applications for DIB and SSI on November 14, 2017. Dkt. No. 9-5 at 2-3, 15-16.[1] Mendoza alleged his disability began on October 12, 2015. Dkt. No. 12 at 1; TR at 93-94, 106-07. He claims to be disabled due to the following conditions: major depressive disorder recurrent severe, generalized anxiety disorder, hypertension, hypothyroidism, severe arthritis, pain in the left knee, torn meniscus, torn anterior cruciate ligament, alcohol use disorder, and vitamin D deficiency. Dkt. No. 12 at 1-2; TR at 93-94, 106-07. Mendoza's application was initially denied on March 1, 2018. TR at 119-20. Mendoza applied for reconsideration on April 11, 2018, but his application was denied again on June 18, 2018. *Id.* at 149-50.

Mendoza requested a hearing, which was held before Administrative Law Judge ("ALJ") Kimberly O. Wyatt on March 14, 2019. *Id.* at 18, 67-92, 176-78, 194. Mendoza was represented by counsel at the hearing. *Id.* at 70. Mendoza and a vocational expert testified at the hearing. *Id.* at 69, 72-91. The ALJ issued her decision denying benefits on July 17, 2019. *Id.* at 15. The ALJ determined that Mendoza had not been disabled between October 12, 2015 and the date of her decision (hereinafter, the "relevant period"). *Id.* at 32.

Mendoza appealed to the Appeals Council. *Id.* at 1. The Appeals Council denied Mendoza's request for review on May 11, 2020. *Id.* at 1-5. The Appeals Council's denial made the ALJ's decision final. *Id.* at 1. Mendoza timely filed his instant Complaint on July 15, 2020. Dkt. No 1; TR at 1-2 (notifying Mendoza that his civil complaint must be

---

[1] Counsel for Saul has filed a certified electronic copy of the transcript of the underlying record in this case. *See* Dkt. No. 9 through Dkt. No. 9-14. The Court will refer to the transcript with the abbreviation "TR."

filed within 60 days of receiving the Appeals Council's letter and that he is presumed to have received the letter five days after the letter's date). On December 8, 2020, Saul filed his Answer to Mendoza's Complaint, along with a certified copy of the transcript of the underlying record in this case. Dkt. No. 8; Dkt. No. 9 through Dkt. No. 9-14. The parties filed their dispositive motions on February 9, 2021. Dkt. No. 11; Dkt. No. 13. Saul responded to Mendoza's Motion on March 10, 2021; Mendoza filed his Reply on March 23, 2021. Dkt. No. 14; Dkt. No. 15.

### III. Standard of Review

Provided a district court allows the parties to present their arguments, and enters judgment based solely on the pleadings and the record, the court may review the Commissioner's final decision and enter summary judgment pursuant to FED. R. CIVIL. P. 56. *See* 42 U.S.C. § 405(g); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). Federal court review of the Commissioner's final decision to deny benefits under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla but less than a preponderance. *Id*. A no-substantial-evidence finding is appropriate only when no credible evidentiary choices or medical findings exist to support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). If the findings

of the Commissioner are supported by substantial evidence in the record, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, the court must scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) ("This standard of review is not a rubber stamp for the Secretary's decision and involves more than a search for evidence supporting the Secretary's findings.").

Evidentiary conflicts are for the Commissioner, not the courts, to resolve. *Brown*, 192 F.3d at 496. A court may not reweigh the evidence, try the issues de novo, or substitute its own judgment for that of the Commissioner. *Id*. This is true even when the weight of the evidence does not support the Commissioner's decision. *Id*. (citing *Bowen*, 864 F.2d at 343). The court's task is deferential judicial review of the Commissioner's disability decision, but not so deferential as to result in meaningless review. *Id*. When determining if substantial evidence supports the Commissioner's determination, the court must weigh: (1) the objective medical facts, (2) the diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Connie G. v. Berryhill*, No. 3:17-CV-03342-M (BT), 2019 WL 1294441, at *2 (N.D. Tex. Mar. 21, 2019) (same).

### IV. Establishing Disability

A claimant is not entitled to benefits under Titles II and XVI unless the individual has a qualifying disability, as that term is defined by the Act. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campell*, 461 U.S. 458, 459-61 (1983). The Act defines disability the same way

under both Titles, and the implementing regulations governing DIB and SSI are substantially identical. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (same).[2] Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A sequential five-step process is used to determine whether a claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).

At steps one through four, claimants bear the burden of proving that: (1) they have not engaged in substantial gainful activity during the relevant period; (2) they have one or more severe impairments; (3) their impairment(s) qualify as either a listed impairment in the appendix to the regulations, or equivalent to a listed impairment; and, (4) if they do not have an impairment or combination of impairments qualifying as a listed impairment or its equivalent, the impairment or combination of impairments they do have still gives them a residual functional capacity that prevents them from performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)-(iv); *Leggett*, 67 F.3d at 564 n.2 (same).[3] Once the claimants meet their burden at steps one through four, the burden

---

[2] Because the implementing regulations governing DIB and SSI are substantially identical, the Court will cite to the regulations interchangeably. *See Barnhart v. Thomas*, 540 U.S. at 24 ("For simplicity sake, we will refer only to the II provisions, but our analysis applies equally to Title XVI.").

[3] The regulations refer to the assessment of disability as a sequential five-step process. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4). However, the process might be more accurately described as a six-step process because the Commissioner must determine a claimant's residual functioning capacity after step three, but before step four. *See* 20 C.F.R. § 404.1520(e) ("Before we go from step three to step four, we assess your residual functional capacity."); *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017) (same); *West v. Colvin*, No. W-14-CA-294, 2016 WL 11581019, at *5 (W.D. Tex. May 18, 2016) ("The ALJ determines a plaintiff's RFC after step three and before step four of the sequential evaluation process.")

shifts to the Commissioner at step five to establish that the claimants can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236-37. The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled ends the inquiry. *Leggett*, 67 F.3d at 564.

## V. Discussion

Mendoza in his applications for SSI and DIB benefits stated that he is disabled due to various impairments, which the ALJ determined were "severe" and found support for the following: obesity, left knee osteoarthritis, right shoulder bicipital tendinitis, and right shoulder impingement syndrome. TR at 20. In the three grounds for relief raised in his Motion for Summary Judgment, Mendoza argues that the ALJ: (1) erred in failing to properly weigh the opinion of the treating physician, Mario Sanchez, M.D.; (2) erred in failing to properly weigh the opinion of consulting examiner, Michael Heffernan, CP, Ph.D.; and (3) erred in failing to incorporate, without explanation, any mental limitations into Plaintiff's residual functioning capacity (RFC). Dkt. No. 12 at 1, 11, 17, 22. In his Response, Saul disputes these allegations; he argues that the ALJ decision must be affirmed because it comports with the regulations and is supported by the record. Dkt. No. 14. Mendoza replied and reasserted his original arguments. Dkt. No. 15 at 1. In his Cross-Motion, Saul argues the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. No. 13; Dkt. No. 13-1.

**A.    The ALJ's Decision**

---

*report and recommendation adopted sub nom. West v. Colvin*, No. CV W-14-CA-294, 2016 WL 11581020 (W.D. Tex. June 8, 2016).

At step one, the ALJ found that Mendoza had not engaged in substantial gainful employment since October 12, 2015. TR at 20. At step two, the ALJ found that Mendoza had the following severe impairments: obesity, left knee osteoarthritis, right shoulder bicipital tendinitis, and right shoulder impingement syndrome. *Id.* at 20. At step three, the ALJ found that Mendoza's impairments failed to meet or equal a listed impairment for presumptive disability under the regulations. *Id.* at 24. The ALJ gave particular consideration to the listing of "major dysfunction of a joint" and Mendoza's obesity, but did not find a listed impairment or medical equivalent. *Id.* at 24-25.

Before moving to step four, the ALJ found that Mendoza had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with some exceptions. *Id.* at 25. The ALJ found that Mendoza could perform light work, except that:

1. He could only stand and/or walk thirty minutes at a time;
2. He could only stand and/or walk up to two hours in an eight-hour workday;
3. He could sit for six hours out of an eight-hour workday;
4. He could occasionally balance, stoop, and climb ramps and stairs;
5. He could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds;
6. He could occasionally reach with the right upper extremity;
7. He could never traverse rugged, wet, or slippery surfaces; and
8. He could perform tasks that require no more than occasional exposure to hazards, such as machinery that requires agility to evade, or to unprotected heights.

*Id.* at 25 (original formatting omitted).

At step four, the ALJ found that Mendoza could not perform his past relevant work. *Id*. at 30. At step five, the ALJ considered Mendoza's age, education, work experience, RFC, and the testimony of a vocational expert. *Id*. at 31-32. The ALJ found that Mendoza could perform other sedentary work existing in significant numbers in the national economy. *Id*. Specifically, the ALJ found that Mendoza could work as a surveillance system monitor, information clerk, or call-out operator. *Id*.

**B.    Whether the ALJ Properly Weighed the Medical Opinions of Mario Sanchez, M.D., and Michael Heffernan, CP, Ph.D., in Determining Mendoza's RFC**

In his first claim, Mendoza alleges that the ALJ did not properly weigh the medical opinion of Mario Sanchez, M.D., his treating physician, when deciding his RFC. Dkt. No. 12 at 1, 11. In his second claim, Mendoza alleges that the ALJ did not properly weigh the medical opinion of Michael Heffernan, CP, Ph.D., when deciding his RFC. *Id*. at 1, 17.

Mendoza contends that the ALJ's decision is not supported by substantial evidence because she disregarded Dr. Sanchez's opinion that Mendoza cannot walk or use his shoulder. *Id*. at 12-13. Mendoza claims the medical records of Dr. Sanchez and other doctors support the opinion of Dr. Sanchez. *Id*. at 13-17. Mendoza further claims the ALJ's findings on the subject are inconsistent with the hearing testimony. *Id*. at 15-16. However, these contentions lack merit.

Mendoza further claims the ALJ's decision is not supported by substantial evidence in the record because she disregarded Dr. Heffernan's opinion concerning Mendoza's mental limitations. *Id*. at 17. Mendoza argues that Dr. Heffernan's reliance on Mendoza's subjective reports does not discredit his medical opinion as it is also based on his own in-person evaluation of Mendoza. *Id*. at 17-20. Mendoza states that the ALJ's

opinion characterizing Mendoza's mental health limitations as mild is incorrect. *Id.* at 20. These contentions also lack merit.

A court cannot reweigh the medical evidence. *Leggett*, 67 F.3d at 567. It is the role of the Commissioner, not the courts, to resolve any conflicts in evidence. *Brown*, 192 F.3d at 496. Judicial review of the Commissioner's findings is limited to two inquiries: (1) whether the decision comports with the proper legal standards; and (2) whether substantial evidence in the record supports the decision. *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015); *Copeland*, 771 F.3d at 923.

When evaluating opinions of medical experts, the Commissioner generally gives more weight to physicians who examined a petitioner as opposed to those who have not. 20 C.F.R. § 404.1527(c)(1). Likewise, the Commissioner gives even more weight to opinions from treating physicians because those medical professionals are likely able to provide a detailed description of medical impairments and bring a unique perspective to the medical evidence. 20 C.F.R. § 404.1527(c)(2). The Commissioner gives a treating physician's opinion controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence in the record. *Id.* Furthermore, the Commissioner gives additional weight to better detailed and reasoned medical opinions. 20 C.F.R. § 404.1527(c)(3). An ALJ need not accept opinions from medical providers that are administrative findings dispositive of a case. 20 C.F.R. § 404.1527(d). For example, an ALJ may disregard opinions as to: (1) whether a claimant is disabled; (2) the nature and severity of a claimant's impairment(s); and (3) whether the claimant's impairment(s) meet the list of impairments under 20 C.F.R. § 404.1527. *Id.* The ALJ is responsible for making findings of fact and conclusions of law when reviewing the record. 20 C.F.R. § 404.1527(e)(2). The

ALJ is also not bound by the opinions of a psychological consultant. 20 C.F.R. § 404.1527(e)(2)(i).

The ALJ has the sole responsibility to determine disability even when the treating physician's opinion is given controlling weight. *Newton*, 209 F.3d at 455. A treating physician's opinion, then, is "not conclusive." *Id*. Instead, the treating physician's opinion may be given little or no weight whenever good cause is shown. *Id*. at 455-56. Good cause exists where: (1) a physician's evidence is conclusory; (2) the opinion is unsupported by medically acceptable clinical, laboratory, or other diagnostic techniques; or (3) the opinion is otherwise unsupported by the evidence. *Id*. at 456. The Commissioner may reject a treating physician's opinion in the absence of reliable, controverting medical evidence from another treating or examining physician. *Id*. at 453. However, the Commissioner must then perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *Id*. To reverse the Commissioner's opinion, then, the petitioner must show prejudice. *Id*. at 458. Prejudice can be shown when additional evidence would have been produced if the ALJ had fully developed the record, and that additional evidence would have led to a different decision. *Id*. at 458.

The treating physician's opinion that an applicant is "disabled" or "unable to work" carries no special significance because these determinations result in legal conclusions that are reserved to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2013); *see also* 20 C.F.R. § 404.1527(d). Similarly, the ALJ has the discretion to determine the disabling nature of a claimant's pain. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). When a physician's opinion is one that is reserved for the

Commissioner, an ALJ is not required to consider the relevant factors in evaluating medical opinions.  *See Frank*, 326 F.3d at 620.

### 1. Dr. Mario Sanchez

In his Motion, Mendoza relies heavily on the Texas Workers' Compensation Work Status Report dated June 5, 2018.  TR at 623; Dkt. No. 12 at 11-2.  In this report, Dr. Sanchez found that, because of his shoulder pain impingement syndrome and ACL tear, Mendoza: (1) could not walk during an eight-hour workday; (2) could not occasionally lift and carry; and (3) has no use of his right shoulder.  TR at 624.  Mendoza points to previous medical opinions of Dr. Sanchez and other doctors which both corroborate and controvert Dr. Sanchez's report.  Dkt. No. 12 at 13-16.  For instance, Dr. Achleitner found osteoarthritis of knee and did not believe Mendoza would be capable of "heavy labor" or "a lot of standing walking or climbing in the future."  TR 374.  Records from Tropical Texas Behavioral Health indicate that Mendoza wore a knee brace, had mild limitation in range of motion in his left knee, had 5/5 muscle strength in all motor groups (except for the left knee in Sept. 2016), had the same range of motion between shoulders, and could walk unassisted on November 8, 2018 and steadily as late as January 10, 2019.  *Id*. at 425, 432, 438, 511, 712, 742, 751.  Other medical records from Dr. Sanchez include entries acknowledging Mendoza's meniscus tear, bicipital tendinitis, patella subluxation, atrophy of left lower leg muscle, osteoarthritis in left knee, torn ACL, shoulder and leg strains, PCL deficiency, internal derangement of knee, rotator cuff tendinitis, and impingement syndrome of right shoulder.  *Id*. at 560, 570, 694, 704.  While earlier records from Dr. Sanchez indicate Mendoza could walk normally, later records following his initial denial of benefits in March 2018 indicate Mendoza had difficulty walking due to pain and

indicate there was shoulder pain but deny loss of use of his right shoulder. *Id.* at 563, 567, 696-97, 706-07.

The ALJ gave Dr. Sanchez's opinion little weight, finding that the opinion was inconsistent with the evidence in the record as a whole. *Id.* at 25-30. For example, Dr. Sanchez stated Mendoza cannot spend any time standing out of an eight-hour workday, but Mendoza's own testimony at the hearing indicated he could spend two or three non-consecutive hours on his feet standing or walking before swelling requires him to sit down. *Id.* at 75-76. Dr. Sanchez also stated Mendoza cannot use his right shoulder, but Mendoza is reportedly able to cook, bathe himself, dress himself, and otherwise contribute around the house. *Id.* at 76-79. Mendoza even reported that he could lift 20-30 pounds. *Id.* at 293. The ALJ noted several other instances where Mendoza testified to having these physical capabilities, finding that there was "no evidence to suggest a complete inability to walk or lift." *Id.* at 30. Tropical Texas Behavioral Health records indicate Mendoza walked normally without a limp as late as July 26, 2018 and January 10, 2019, and that he could walk unassisted with full range of motion on November 8, 2018. *Id.* at 712, 732, 742. The ALJ further noted that Mendoza had been prescribed pain medication and home strengthening exercises to address his shoulder and knee issues. *Id.* at 28; *see Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) (finding that pain alleviated by medication is not disabling); *Bergman v. Berryhill*, 2018 WL 588349 *5 (S.D.Tex. Jan. 29, 2018) ("An impairment that can be reasonably remedied by medication or treatment is not disabling and does not affect RFC."); *Durham v. Colvin*, 2015 WL 9305627 *6 (C.D.Cal. Dec. 21, 2015) ("An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions.").

There is sufficient evidence in the record to supports the ALJ's determination regarding Mendoza's ability to walk or use his shoulder. *See Perez v. Barnhart*, 415 F.3d 457, 461 (explaining that if the ALJ reasonably interprets the medical evidence in the record, the ALJ's finding should be upheld). Therefore, the ALJ's treatment of Dr. Sanchez's medical opinion should be upheld; it is supported by substantial evidence in the record and is based on the application of proper legal standards.

### 2. *Dr. Michael Heffernan*

The ALJ also gave little weight to Dr. Heffernan's opinion, finding it was unsupported by objective medical evidence. TR at 22-23. On June 8, 2017, Dr. Heffernan diagnosed Mendoza with the following:

1. ADHD;
2. Major Depressive Disorder;
3. Panic Disorder;
4. Post-traumatic Stress Disorder;
5. Somatic Symptom Disorder; and
6. Insomnia Disorder.

*Id.* at 380-81. Regarding functional capacity, Dr. Heffernan opined that Mendoza:

1. Could understand, learn and apply information for one and two-step instructions;
2. Could not understand, learn and apply information for complex instructions;
3. Could not carry out and complete complex and one-two step instructions;
4. Could not remember complex and one-two step instructions;
5. Could not sustain concentration and persist in work-related activity at a reasonable pace;
6. Could not maintain effective social interaction on a consistent basis at work or in public; and

    7. Could not deal with normal pressures in a competitive work setting.

*Id.* at 381.

However, the ALJ found Dr. Heffernan's medical opinion "to be of little persuasion." *Id.* at 22. The ALJ noted that during his evaluation, Mendoza exhibited normal appearance, behavior, speech, thought processes, thought content, perceptions, judgment, insight, and cognition. *Id.* The ALJ further noted this diagnosis was inconsistent with the overall treatment record which showed "mild symptomology and good response to medication." *Id.* at 23. Mendoza reported he was responding well to the medication; he asked only for medication refills while denying anxiety, depressed mood, fatigue, or concentration issues. *Id.*

The ALJ is responsible for reviewing the record, then making findings of fact and conclusions of law. 20 C.F.R. § 404.1527(e)(2). Further, the ALJ is not bound by a psychological consultant's opinions. 20 C.F.R. § 404.1527(e)(2)(i). A doctor's opinion or determination that an applicant is "disabled" or "unable to work" are of no special significance because these findings are reserved to the Commissioner. *See Frank*, 326 F.3d at 620. While evidence exists corroborating the testimony of Dr. Heffernan, there is sufficient evidence in the record to support the ALJ's decision. TR 699, 704, 716, 755, 763.

C. **Whether the ALJ Erred by Declining to Incorporate Mental Limitations into the RFC**

In his last claim, Mendoza asserts that although required to do so, the ALJ failed to consider Mendoza's mental limitations when determining his RFC. Dkt. No. 12 at 22-25. Mendoza cites federal regulations to support his claim and includes several medical opinions indicating his various medical limitations. *Id.* at 24-25. Mendoza correctly

notes the ALJ is required to rate mental impairments and consider them in determining the RFC. Dkt. No. 23; 20 C.F.R. § 404.1520a. However, the ALJ found Mendoza's mental limitations to be mild; without a finding of severe mental impairments, an ALJ is not required to make an RFC assessment. 20 C.F.R. § 404.1520a(d); *See Boyd*, 239 F.3d at 705 (when a mental impairment is found not to be severe, it "generally concludes the analysis and terminates the proceedings"). When assessing RFC, all impairments, even those determined not to be severe, must be considered. However, consideration does not require incorporation. The ALJ's decision to not include mental limitations in the RFC, when taken with the evidence discussed below, comported with the legal requirements of 20 C.F.R. § 404.1520a.

Mendoza's own evidentiary submissions undercut his argument, as they indicate that the combination of his impairments does not create mental RFC limitations. For instance, Mendoza cites Dr. Sanchez's disability report, which states that Mendoza's impairments due to shoulder pain impingement syndrome and an ACL tear would constantly interfere with his attention and concentration. TR at 624. However, in the same assessment Dr. Sanchez answered 22 questions concerning Mendoza's mental limitations. These were categorized into four groups:

1) "understanding remembering or applying information";
2) "concentration, persistence, or maintaining pace";
3) "adapting or managing oneself"; and
4) "interacting with others."

*Id*. at 626-28. In response to all of these pertinent questions, Dr. Sanchez indicated Mendoza's degree of limitation as "None." *Id*.

Mendoza further cites Global Assessment of Functioning ("GAF") scores which indicated his "serious symptoms." Dkt. No. 12 at 24. In response, Saul points to several other scores indicating Mendoza's "moderate" or "transient and expectable" symptoms. Dkt. No. 14 at 11. Overall, the assessments cited by Saul are more recent; the most recent assessment found by the Court includes scores in the "moderate" range. Dkt. No. 14 at 11; TR at 674, 715, 725, 735. Critically, these assessments are sometimes internally inconsistent; for instance, assessments dated February 6 and May 1, 2018 found his symptoms to be serious even after Mendoza reported it was "not at all" difficult for him to "do [his] work, take care of things at home, or get along with other people." TR at 605-07, 613-15, 762-64.

In her written decision, the ALJ briefly mentions Mendoza's mental impairments in her RFC determination. *Id.* at 26. The ALJ acknowledged Mendoza's claimed disorders, while noting that Mendoza: 1) takes medication to treat his depression; 2) has knee pain that "brings him down a lot;" 3) tends to isolate; and 4) sees a mental health professional every three months for prescription refills and counseling. *Id.* at 26. The ALJ then decided the intensity, persistence, and limiting effect of Mendoza's mental impairments were overstated. *Id.* Although the ALJ only briefly discussed mental impairments in the RFC determination, the ALJ did consider the mental impairments at length at step two. *Id.* at 20-24.

In assessing the severity of the mental impairments, the ALJ reviewed various records, including one dated January 2019 finding Mendoza's mental limitations to be mild. *Id.* at 21-22. The records reviewed also include reports when Mendoza denied or minimized his mental ailments in February, April, May, and November of 2018. *Id.* The ALJ also noted the conservative treatment Mendoza received and the positive results

when he complied with the treatment. *Id.* at 21; *Bergman*, 2018 WL 588349 *5 ("An impairment that can be reasonably remedied by medication or treatment is not disabling and does not affect RFC."); *Durham*, 2015 WL 9305627 *6 ("An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions."). The ALJ further noted Mendoza's ability to function independently inside and outside the house. *Id.* at 23. The ALJ relied on this and other evidence to find Mendoza's impairments to be mild, and she determined that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the ... mental function analysis." *Id.* at 24.

The Court finds that the ALJ comported with the proper legal standards, and that her findings should be upheld; they are supported by substantial evidence in the record. While not reweighing the evidence, the Court finds the medical records to be very inconsistent regarding Mendoza's mental limitations. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("Conflicts in the evidence are for the Secretary and not the courts to resolve."). The records concerning Mendoza's demeanor strongly controvert the fraction of medical records which support mental limitations, especially those concerning social issues. TR at 22-23; *Bailey v. Saul*, No. 20-60790, 2021 WL 1748487, at *2 (5th Cir. May 3, 2021) ("if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence"). Saul's final decision, then, should be affirmed.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that the Court: 1) **DENY** Mendoza's Motion; 2) **GRANT** Saul's Cross-Motion; 3) **AFFIRM** Saul's final decision in

Mendoza's underlying administrative action; and 4) **DIRECT** the Clerk of Court to **CLOSE** this civil action.

### VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **21st** day of July, 2021.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**